UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CATHERINE SULLIVAN,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　 )
　　　　　　　　　　　　　　　　　)　Case No. C05-1857-JLR-JPD
　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
JO ANNE B. BARNHART, Commissioner )　REPORT AND RECOMMENDATION
of Social Security Administration, )
　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　)
_____)

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Catherine Sullivan appeals a final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the ALJ's decision be reversed and remanded for further administrative proceedings. On remand, the ALJ should reevaluate the medical evidence and lay-witness statements and assess plaintiff's credibility. He should also call a qualified medical expert and take any other steps necessary to determine whether plaintiff's severe impairments began prior to her date last insured ("DLI").

## II.  FACTS AND PROCEDURAL HISTORY

Plaintiff is a fifty-eight-year-old woman with a high school degree, two years of college experience, and training in computer use and maintenance.  AR 48, 64, 708. Beginning in 1980, plaintiff began a fifteen-year career as a legal assistant.  AR 59.  In 1991, she began experiencing a cough, fatigue, and hypertension.  AR 712-14.  She reduced her work schedule to part-time and underwent kidney surgery in 1994.  AR 713, 728.  Her symptoms did not improve and she was laid off for unrelated reasons in 1995.  AR 48, 710. Without a job, plaintiff lost her health insurance and was unable to afford access to frequent health care.  AR 717.  Although she briefly attempted to return to school, plaintiff has not worked since 1995.[1]  AR 715-16.  She was insured for DIB through December 31, 2000.  AR 51.

On August 3, 2001, plaintiff filed an application for DIB.  AR 48-50.  She alleged disability beginning on January 1, 1996, as a result of kidney disease, cardiomyopathy, and mitraltricuspid regurgitation, *e.g.*, heart and kidney failure.  AR 58.  Plaintiff's applications were denied both initially and upon reconsideration.  AR 38-44.  Plaintiff requested an administrative hearing.  AR 45.

On April 22, 2003, a hearing was held before an ALJ at which plaintiff and medical expert ("ME") Arthur Anderson, M.D. testified.  AR 704-37.  On July 25, 2003, the ALJ issued a decision finding plaintiff not disabled at step two.  AR 15-22.  In particular, the ALJ found that plaintiff failed to demonstrate that she had any medically-determinable severe impairments prior to her DLI.  AR 22.  The ALJ also denied plaintiff's motion for a supplemental hearing for an evaluation with a psychologist or psychiatrist.  AR 15, 734-36.

Plaintiff requested administrative review of the ALJ's decision, but the Appeals Council denied her request for review.  AR 8-10.  The ALJ's July 25, 2003, decision

---

[1] Plaintiff alleges that she had to drop out of school because of severe coughing, fatigue, and depression.  AR 716.

REPORT AND RECOMMENDATION
PAGE -2

therefore serves as the Commissioner's final decision for purposes of judicial review. 20 C.F.R. §§ 404.981, 422.210 (2005). On November 8, 2005, plaintiff timely filed this suit challenging the ALJ's final decision. Dkt. No. 1.

### III.  JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g) (2005).

### IV.  STANDARD OF REVIEW

The Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; "it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal citations and quotations omitted). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citations omitted).

### V.  EVALUATING DISABILITY

As the claimant, Ms. Sullivan bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A). A claimant is disabled only if her impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Social Security regulations set out a five-step sequential-evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must establish that she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant establishes that she has not engaged in any substantial gainful activity, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically-severe impairments or combination of impairments that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant who meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner then uses the RFC to determine whether the claimant can still perform the physical and mental demands of her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is not able to perform her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the

claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## VI.  DECISION BELOW

On July 25, 2003, the ALJ issued a decision finding:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2000.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has the following medically determinable impairment(s): depression and edema.

4. The claimant did not have any impairment or impairments that significantly limit her ability to perform basic work-related activities prior to her date last insured; therefore, the claimant did not have a severe impairment prior to her date last insured (20 CFR 404.1521).

5. The claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision (20 CFR § 404.1520(c)).

AR 22.

## VII.  ISSUES ON APPEAL

Plaintiff's brief raises the following issues:

1. Did the ALJ properly evaluate the medical evidence?

2. Did the ALJ properly evaluate lay-witness statements?

3. Did the ALJ erroneously evaluate plaintiff's credibility?; and

4. Did the ALJ fail to comply with SSR 83-20 in determining plaintiff's onset date?

## VIII.  DISCUSSION

There is little doubt that plaintiff is currently disabled. The key issue in this case is whether the ALJ properly determined that plaintiff was not disabled prior to her DLI. *See Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (noting a plaintiff just demonstrate that he or she was disabled prior to their DLI). This case presents a particular challenge because the record lacks diagnostic medical evidence from plaintiff's alleged onset to her DLI. Thus, the ALJ was left in the difficult position of inferring plaintiff's onset date based on retrospective medical opinions, plaintiff's testimony, and lay-witness statements.

SSR-83-20 explains how to infer an onset date in such difficult circumstances.

> In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning the impairment severity. . . . The medical evidence serves as the primary element in the onset determination. . . . With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling . . . . In such cases it will be necessary to infer the onset date from the medical and other evidence that describe the symptomology of the disease process. . . . [T]he date alleged by the individual should be used if it is consistent with all the evidence available. . . . [B]ased on the medical evidence. . . [an ALJ may] reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working [but such decision] . . . must have a legitimate medical basis.

SSR 83-20 at *2-*3. To determine an onset date in the absence of contemporaneous medical evidence, the ALJ must consult an ME and consider all available evidence. *Armstrong v. Commissioner of Social Security*, 160 F.3d 587, 589-90 (9th Cir. 1998). In this case, the ALJ's decision failed to evaluate the medical evidence adequately, particularly the opinions of plaintiff's treating physicians. It also failed to assess plaintiff's credibility and properly evaluate the lay-witness statements.

A. <u>Medical Evidence</u>.

In May 2001, plaintiff's treating physician, Dr. Partizia Showell, diagnosed plaintiff with cardiomyopathy based on a recent echocardiogram. AR 308. Even though this was a new diagnosis, Dr. Showell believed plaintiff "ha[d] been symptomatic for maybe a couple of years." AR 308. That October, Dr. Showell opined that plaintiff's impairment had

REPORT AND RECOMMENDATION
PAGE -6

01 "probably" arisen in the 1990s. AR 186. She believed it was "likely" to have began within
02 the last five to seven years, but acknowledged that an absence of data made it difficult to be
03 more certain. AR 186. Plaintiff began seeing treating cardiologist James Schneider, M.D.
04 shortly after Dr. Showell's diagnosis. He, too, acknowledged the lack of diagnostic evidence
05 from the period prior to plaintiff's DLI, but he opined that it was "probably likely that she
06 did have [her impairment] back in the 1990's[.]" AR 623-24. At the hearing, however, the
07 ME testified that it was "impossible to tell" whether plaintiff's impairment began prior to her
08 DLI because where was insufficient data. AR 731-34. He believed plaintiff's clinical
09 complaints were "too non-specific." AR 734.

10 After the hearing, Dr. Schneider submitted a letter addressing the ME's opinion and
11 reiterating his opinion that plaintiff's impairment began before her DLI. AR 654-56. In it,
12 he evaluated the medical evidence and opined that a brief onset period was "improbable in
13 [plaintiff's] case given her symptoms prior to the end of 2000[.]" AR 654. He then
14 evaluated a variety of medical data to support this conclusion and stated that it was "more
15 probable than not" that plaintiff's symptoms were "consistent with a gradual onset" that
16 began before the year 2000. AR 654-55.

17 Generally, the opinions of treating physicians are to be given great consideration,
18 particularly when they relate to medical areas within their area of specialization. 20 C.F.R. §§
19 404.1527(d)(5); 416.927(d)(5); *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004).
20 A treating physician's opinion, however, is not necessarily conclusive as to either a physical
21 condition or the ultimate issue of disability. *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th
22 Cir. 2001). When a treating physician's opinion is contradicted by other opinions, as it is here,
23 the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the
24 record" in order to reject it. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal
25 citations and quotations omitted). "This can be done by setting out a detailed and thorough
26 summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

REPORT AND RECOMMENDATION
PAGE -7

01   making findings." *Id.* (citing *Magallanes,* 881 F.2d at 751). The ALJ must do more than
02   merely state his conclusions. "He must set forth his own interpretations and explain why they,
03   rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen,* 849 F.2d 418, 421-22 (9th
04   Cir. 1988)).

05         The ALJ's decision preferred the ME's opinion over the testimony of treating Drs.
06   Showell and Schneider. The decision, however, provided no analysis of Dr. Showell's
07   opinion, despite the fact that it related to plaintiff's alleged onset. It also rejected Dr.
08   Schneider's opinion because it was "based on conjecture." AR 21. But where an onset date
09   must be inferred, the fact that a treating opinion is retrospective in nature cannot, by itself,
10   be an adequate reason to reject it. SSR 83-20 would have little meaning if this were the case.
11   The decision also appears to have suggested that Dr. Schneider's opinion was unreliable
12   because plaintiff's "edema fluctuated," but gave no explanation as to why this, even if true,
13   invalidated Dr. Schneider's entire opinion. AR 21. More importantly, the decision gave no
14   rationale for why the ME's opinion was more reliable than those of Drs. Showell and
15   Schneider. In particular, the decision did not address why the rationale and evidence
16   discussed in Dr. Schneider's May 2003 letter was less reliable, even though it was consistent
17   with plaintiff's alleged onset, her departure from work, and the lay-witness testimony. *See
18   infra*, §§ 2 and 3.

19         The decision also gave inadequate treatment to medical evidence regarding plaintiff's
20   alleged mental impairments. For instance, Dr. Lindsey treated plaintiff and diagnosed her
21   with "MDDR" — major depressive disorder — as early as August 1996, and observed her to
22   have decreased concentration and depressive episodes. AR 651-53. Similarly, Dr. Mason
23   diagnosed plaintiff with depression in 1999. AR 156-58. Plaintiff also testified to being
24   depressed as early as the mid 1990s. AR 715-16. The ME, however, was unable to testify as
25   to the severity or onset of plaintiff's alleged mental impairments. AR 734-35. Nevertheless,
26   the ALJ denied plaintiff's request for supplemental hearing with a mental-health professional

01  and concluded that plaintiff's "depression was not long-term major depression . . . [and
02  therefore] not a severe impairment." AR 21. Although the decision paraphrased several
03  opinions, it provided no analysis and did not explain which opinions were accepted, which
04  were rejected, and the reasons therefore. The ALJ should reassess the medical evidence on
05  remand. Additionally, because the onset of plaintiff's mental illness, if any, was unclear, the
06  ALJ should call a qualified medical expert to make that determination. *Armstrong*, 160 F.3d
07  at 590.

08        B.      <u>Lay-Witness Testimony</u>.

09        Several friends and family members submitted statements regarding the severity of
10  plaintiff's alleged impairment and the date it began. Plaintiff's husband submitted a written
11  statement that indicated plaintiff suffered from depression, extreme fatigue, crying spells, and
12  a general deterioration during the 1990s. He described symptoms such as edema, depression,
13  and coughing, as well as difficultly concentrating. AR 87-88. Terry Sullivan, plaintiff's
14  sister, stated that plaintiff's health deteriorated severely in 1999, that plaintiff suffered from
15  severe fatigue, that she lost the ability to care for herself, and that she suffered memory loss.
16  AR 90. Plaintiff's friend, Karen Gorland, stated that she had observed plaintiff having severe
17  fatigue in 1998, and noted that she could not even walk 15 minutes without losing her breath.
18  AR 92. She also observed plaintiff suffering from edema, loss of focus, and depression. AR
19  93. Plaintiff's father provided similar statements. AR 95-99.

20        The decision, however, did not give these statements any weight. The decision
21  indicated that the statements were unreliable because the declarants did not offer to send
22  plaintiff to a specialist or "fe[el] the need to report these extreme symptoms to the
23  [plaintiff's] treatment provider." AR 21. It also indicated that plaintiff was able to "carry
24  out a relationship and get married," which the ALJ determined showed plaintiff "was able to
25  maintain some level of functioning." AR 21.

26

If an ALJ wishes to discount the testimony of a lay witness, he must provide reasons germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). An ALJ may give greater weight to a witness who sees claimant on a daily basis and may reject statements if they are inconsistent with the record as a whole, or is inconsistent with the medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (internal citations omitted).

The decision failed to address the statement of Ms. Gorland and gave inadequate reasons for discounting the statements of plaintiff's husband, father, and sister. AR 21. Plaintiff's father stated that prior to 2000, he had, in fact, urged plaintiff "to get into the hands of a competent, qualified internist and cardiologist . . . [because] her situation could be life threatening." AR 96-97. Moreover, the fact that these witnesses may not have chosen to report the symptoms they observed to plaintiff's physicians is not germane, because it does not bear on their accuracy or veracity. Similarly, the fact that plaintiff was able to continue to maintain a relationship with a long-time boyfriend is not germane to the fact that she may have suffered from her alleged severe mental and physical impairments. On remand the ALJ should reevaluate these statements in light of the record as a whole and, if he discounts them, provide reasons that are germane to each witness.

C.      Plaintiff's Credibility.

At the hearing, plaintiff provided testimony regarding the severity of her symptoms and their alleged onset date. She testified that her condition began in 1991 and that she suffered severe fatigue while working part-time in 1995. AR 710. She indicated that she was unable to work full-time after 1992. AR 713. Plaintiff reported suffering from hypertension, depression, fatigue, and cough. AR 715. She indicated that she was on anti-depressants since 1995, and that she experienced memory problems. AR 716, 722. She unequivocally stated that her shortness of breath, fatigue, and coughing were all present prior to 2000. AR 718. The ALJ, however, gave no assessment of plaintiff's testimony, despite the fact that it was consistent with the opinions of treating Drs. Showell and Schneider, as

well as the opinions of the lay witnesses.  He should evaluate plaintiff's credibility on remand.

REPORT AND RECOMMENDATION
PAGE -11

## IX. CONCLUSION

For the reasons discussed above, this case should be reversed and remanded for further administrative proceedings not inconsistent with this report and recommendation. In particular, the ALJ should re-evaluate the medical evidence to determine whether plaintiff's severe impairments began prior to her DLI. He should call a medical expert familiar with cardiology and mental illness in order to do so. The ALJ should also assess plaintiff's credibility, reassess the statements of the lay witnesses, and take any other appropriate measures necessary to determine whether plaintiff was disabled prior to her DLI. A proposed order accompanies this report and recommendation.

DATED this 8th day of June, 2006.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -12